### TANFORAN COMPANY, Limited, v. UNITED STATES.

### No. 11549.

Circuit Court of Appeals, Ninth Circuit.

June 24, 1947.

Rehearing Denied Aug. 19, 1947.

James F. Boccardo, of San Jose, Cal., and Harold Faulkner, of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and William E. Licking, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT, HEALY, and ORR, Circuit Judges.

HEALY, Circuit Judge.

Appellant, owner of the Tanforan Race Track, was defendant in a condemnation suit brought by the United States in which an amended final judgment was entered April 16, 1945, condemning the property for use by the Navy at a fixed annual rental. So far as the judgment is pertinent here, it provided that prior to the surrender of possession the government would restore the premises and buildings to the condition existing at the date of entry. On October 1, 1946, appellant, under the caption and court number of the condemnation proceeding, filed an application which it describes as being in the nature of an ancillary and supplemental bill in equity to prevent interference with and to enjoin the enforcement of this judgment. The government moved for a dismissal on the ground that the action had been concluded and the judgment therein satisfied by agreement of the parties. The appeal is from the order granting the motion.

A study of the application leaves us in no doubt that the motion was well taken. The pleading alleges that the government made a survey of the cost of restoration, and that following the survey there were negotiations with appellant culminating in a written agreement dated April 4, 1946, whereby appellant, in lieu of performance by the government of its obligation to restore the premises, and "in full satisfaction" of that obligation, accepted the sum of $724,669 in cash plus title to the improvements, equipment, and personal property which the United States had placed upon the premises during its occupancy. In addition the government undertook to pay the specified rental to June 30, 1946, al-though it agreed to surrender and did surrender the property as of the date of the contract, namely, April 4, 1946, and appellant accepted possession as of that time. The contract, copy of which was appended, further provides that appellant "does hereby remise, release and forever discharge the Government, its officers, agents and employees, from any and all manner of actions, liability and claims against the Government, its officers, agents and employees, for the restoration of said property or by reason of any other matter, cause or thing whatsoever, particularly arising out of the use and occupation by the Government of the aforesaid property" except the forward rent mentioned above.

The pleading, after showing this contractual disposition of the matter, avers that appellant entered into the agreement in consideration of certain facts which were fully known to the government, these being that the California Racing Commision had allotted to Tanforan 45 racing days commencing October 12, 1946; that through the holding of the meet appellant would be able to make very large sums; and that because of these circumstances appellant was itself willing to assume the work of restoration. On June 6, 1946, however, it was served with an order of the Civilian Production Administration directing it to stop construction on its property under threat of severe criminal penalties. The National Housing Administration, it is alleged, aided and abetted the Civilian Production Administration in this move. It is averred that the purpose and object of these authorities is "to defeat and obstruct the decree contained in the judgment of this court," and that their conduct is "in contemptuous and willful disregard of that judgment." The prayer is that the United States, its officials and the administrative authorities named, be enjoined from interfering in any manner with appellant or obstructing it in its restoration of the property "in accordance with the amended judgment heretofore filed herein."

As has already been made evident, there remains no judgment in the condemnation proceeding to obstruct or vindicate, it having been satisfied by mutual agreement of the parties. The application, in-

deed, bears no substantial relation to the condemnation suit. Its basis, if any, is necessarily the contract of April 4, 1946, which, in turn, appears to have been fully executed. While the pleading does no more than hint the fact, the inference is inescapable that the Civilian Production Administration intervened to halt the use by appellant of critically needed materials and declined to grant a permit for such use, in conformity with restrictions imposed in aid of the Veterans Emergency Housing Program. These restrictions had become effective through the issuance on March 26, 1946, of Veterans Housing Program Order No. 1, Federal Register, Vol. 11, No. 60, p. 3190. This order was outstanding at the time the Navy accepted Tanforan's proffered terms of settlement, and the contract which ensued was entered into by both parties with full knowledge of the restrictions.

We turn for a moment to the alleged "equities" of the situation. The thought of appellant seems to be that the United States has in some manner estopped itself from enforcing these restrictions as against Tanforan. It is asserted, for example, and is doubtless true, that the settlement was a favorable one from the standpoint of the government. But there is an entire absence of any showing of sharp practice on its part in arriving at the settlement. Made a part of the application as an exhibit is a copy of a letter from Assistant Secretary of the Navy Kenney to Civilian Production Administrator Small, dated July 17, 1946, relative to the circumstances, already related, of the Navy's negotiations with the Tanforan Company for the surrender of the track. A reading of this letter shows that the Navy made no collateral commitments and gave no assurances of any special treatment to be accorded Tanforan. The Navy's undertaking, as the letter discloses, went no further than to "agree informally with Tanforan at the time of the settlement to furnish upon request at any time a statement of the circumstances surrounding the settlement." The writing of the letter evidences the Department's compliance with this agreement, and there is no claim that the Department agreed to do anything more than that.

The judgment in the condemnation suit did not obligate the United States to restore the property by any fixed date other than that it was to do the work of restoration prior to its surrender of possession; and under the terms of the judgment the government was entitled to continue in possession indefinitely subject only to its obligation to pay the specified rent Nobody knew that better than appellant. The inference to be gathered from the four corners of its pleading is that Tanforan, because of the early meet assigned to it by the Racing Commission, preferred to take its chances of persuading the Civilian Production Administration to grant it a permit, notwithstanding the critical shortage of materials and the desperate need of speeding the program of housing for the veterans. The administrative body simply declined to be persuaded.

It is argued that the Civilian Production Administration was without power to issue the order of March 26, 1946. The argument proceeds on grounds too tenuous to justify discussion.

Order of dismissal affirmed.